## ELLEN B. CLELAND
### *v.*
## WILLIAM T. FISH *et al.*

TRUSTEE—*what constitutes.* The mere fact, that a purchaser is the son-in-law of the grantor does not constitute the purchaser a trustee of the vendor. And when it appears, that the vendor and vendee while on friendly terms were not intimate, and when the purchaser had not acted as the agent or business adviser, and it does not appear, that the vendor said any thing which implied that she relied upon the vendee to act as her agent in the matter, it will not be presumed, that such confidence was reposed as required the purchaser to disclose the fact, that he had superior knowledge of the value of the property, or that he was authorized by the remaindermen to offer more than he gave for the life estate of the vendor in the property.

APPEAL from the Circuit Court of Morgan county; the Hon. D. M. WOODSON, Judge, presiding.

This was a bill in chancery, filed in the Morgan Circuit Court, by Samuel Cleland and Ellen B. Cleland, against Wil-

liam H. Gest, Martha V. Fish, W. T. Fish, Servis Hatfield, Anna J. Cassell, Charles Cassell, Susan Cassell, Catharine R. Cassell and James Berdan. The bill alleges, that complainant, Ellen, was the widow of Nathan H. Gest, and that, as such, there had been assigned to her as dower in her late husband's estate, lot sixty-three in Jacksonville, Illinois, with other property, to hold for life. That the buildings on the lot were in a dilapidated condition, yielding not more than $100 rent. That the owners of the remainder were desirous of partition of the premises. That in January, 1859, W. H. Gest, Servis Hatfield, J. J. Cassell and W. T. Fish, representing their own and the interests of the other heirs, had a conference at Jacksonville, with reference to a speedy division of the real estate, which had descended to them from N. H. Gest.

That complainants were residing in Rock Island, and did not know the value of the lot. That defendants at the conference had concluded, that the life estate of complainants was worth $2,600, or $2,800; that it was their interest to induce Mrs. Cleland to sell, or to agree to a sale, and receive a portion of the purchase money; that Fish was deemed the most suitable agent to negotiate with her, and that he was authorized to give her one-half of what the lot could be sold for, if she would join in a sale, or $2,600 or $2,800 for her life estate.

That he went to Rock Island for the purpose, and falsely and fraudulently concealed the fact, that her life estate was worth $26,000 or $28,000, and that he was authorized to offer her that sum, or one-half of what could be had on the sale of the property. That he represented, that her interest in the property was not worth more than $800, and the property could not be sold without the consent of all of the owners of the remainder.

That Fish was her son-in-law; that her confidence superinduced by the relationship, continued and increased until the date of the sale, and that she believed he was truly and unselfishly promoting, as he best could, her pecuniary interest, and of which confidence he was aware. That he offered, and she accepted, $1,000 for her life estate, and that she and her husband executed a deed of conveyance.

That in February, 1859, proceedings for partition were commenced in the Morgan Circuit Court, by Fish and others, in which a decree was rendered, that the premises be sold, and that the annual interest on the net proceeds of the sale be paid to Fish, during the life of Mrs. Cleland, and on her death, the money he divided among those owning the remainder. The premises were sold for $7,680.00, and Berdan, a special master, holds the funds. The bill prays an injunction against further payments to Fish, and that Berdan be decreed to pay the interest to Mrs. Cleland, and general relief.

The defendants' answered, and replications were filed. The death of Samuel Cleland was suggested. A hearing was had on the bill, answers, replications and proofs, and the court rendered a decree denying the relief sought, and dismissing the bill. And to reverse that decree complainant brings the case to this court on appeal.

Mr. HENRY E. DUMMER, for the appellant.

Mr. H. B. McCLURE and Mr. I. J. KETCHAM, for the appellees.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the Court :

When this case was previously before this court, the decree of the court below was reversed, and the bill dismissed. 33 Ill. 238. At a subsequent term of the court the decree of dismissal was modified, so as to make a dismissal without prejudice, that appellant might, by a new bill and proofs, establish such a relation of confidence and trust as rendered the concealment of the fact, that the remaindermen were willing to give a larger sum than was paid to Mrs. Cleland, for her life estate in the premises. This bill was afterward filed, and it is charged, that Fish was the son-in-law of complainant; that her confidence, naturally superinduced by the relationship, continued and increased until the date of the sale; that she reposed entire and implicit trust and confidence in him, believing that he was truly and unselfishly promoting, as he best could, the pecuniary

interests of complainant, and that he was well aware that she reposed such confidence.

The bill also charges, that before going to Rock Island to purchase her interest, Fish knew that the remaindermen had, upon consultation, authorized him to offer complainant $2,600 or $2,800, for her life estate, or, at her option, one-half of what the property could be sold for, by uniting her title to the fee, and that he fraudulently concealed these facts from her, and represented that her interest was not worth more than $800, and that the property could not be sold without the consent of all the owners, and that Hatfield, who owned two-fifths, was unwilling to sell. That by reason of these misrepresentations, and the concealment of these facts, she was induced to sell her life estate to Fish for one thousand dollars.

When the case was formerly before the court, it was held, that the fact that a person occupies the relation of son-in-law to the vendor, does not impose the legal duty of disclosing his knowledge of the value of the property, but, to have that effect, it must appear, that such a relationship occasioned, and such a trust grew out of it, that authorized appellant to act upon the presumption, that there had been no concealment of any material fact from her.

The evidence discloses the fact, that the parties resided remotely from each other; that, while the social and family relations existing between the families were good, and had been uninterrupted, from their separation but little intercourse had occurred between the families. Nor does it appear that Fish had ever acted as the agent of appellant, in this or any other business, or had ever been her confidential business adviser, or that she had ever intrusted him with the management of her business affairs. Nor does it appear, that he had agreed, in this case, to ascertain the value of her life estate, or the sum for which it could be sold. Had any of these facts been shown, then the trust and confidence might have been inferred, which would render it inequitable to fail to make the disclosure. But, when all of the facts are attentively considered, we do not see that the case is at all strengthened, as it

now only amounts to the claim, that he was her son-in-law, and that relationship imposed the duty of disclosing these facts, which we have seen does not in law impose it; nor can we infer, from that fact alone that such confidence was reposed.

The witnesses, it is true, state that appellant seemed to have confidence in him, and they give it as their opinion, that it was by reason of that confidence that she sold the property to him. The same may, no doubt, be truly said in every case where mutual friends trade, and the purchaser fails to disclose his superior knowledge of the value of the property. It does not appear, that appellant, at any time during the negotiation, said to him that she relied upon him, owing to the relation-ship, to truly disclose all of the facts, and that she only sold in consequence of such confidence reposed in him. Had she done so, the case might have been different. We think that the case, as now presented, is substantially the same as when here before; that the legal principles which must govern it are not different, and that the appellant has still failed to show herself entitled to the relief sought.

On the question of fraudulent misrepresentation, the case is substantially the same, and we deem it unnecessary to again discuss the evidence. The decree of the court below is affirmed.

*Decree affirmed.*

Mr. JUSTICE LAWRENCE dissenting.